IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

REGINALD McFADDEN,

                    Plaintiff,

          -v-                                         Civil Action No.
                                                      9:04-CV-0799 (DNH/DEP)

GLENN S. GOORD, *et al.*,

                    Defendants.

_____

APPEARANCES:                                OF COUNSEL:

FOR PLAINTIFF:

REGINALD McFADDEN, *pro se*


FOR DEFENDANTS:

HON. ELIOT SPITZER                          MEGAN M. BROWN, Esq.
Attorney General of the State              Assistant Attorney General
of New York
Attorney for Defendants
Department of Law
The Capitol
Albany, New York   12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT, RECOMMENDATION AND ORDER

     Plaintiff Reginald McFadden, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this civil rights

action pursuant to 42 U.S.C. § 1983 alleging deprivation of his

constitutionally protected rights.[1]   Liberally construed, plaintiff's complaint –

which names as defendants the Commissioner of the New York State

Department of Correctional Services ("DOCS") and twenty-one other

individuals employed by or affiliated with the DOCS – asserts claims of

deliberate indifference to his medical needs, growing out of defendants'

alleged failure to diagnose and properly treat his Hepatis C Virus ("HCV")

condition, and additionally registers claims of unlawful retaliation for having

engaged in protected activity, a procedural due process violation, and cruel

and unusual punishment.

Currently pending before the court is an application by the various

defendants who have thus far appeared in the action with the exception of

Dr. Irwin Lieb, who is separately represented, seeking dismissal of certain

_____

[1]        In an action filed by the plaintiff in this district a year before
commencement of this suit, *McFadden v. Mitchell, et al.*, Civil Action No. 9:03-CV-931
(LEK/DRH) (N.D.N.Y., filed July 24, 2003) ("*McFadden I*"), plaintiff was denied *in forma
pauperis* status pursuant to 28 U.S.C. § 1915(g) and Northern District of New York
Local Rule 5.4(a), in light of the prior dismissal of three or more prior claims filed by the
plaintiff, as frivolous, malicious or failing to state a cognizable claim.  *See McFadden I*,
Dkt. No. 6, at 3 & n. 1.  McFadden achieved *in forma pauperis* status in this case by
invoking a recognized exception to the "three strikes" rule, involving allegations of
imminent danger of serious physical injury at the time the complaint was filed.  28
U.S.C. § 1915(g); *see Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002).

of plaintiff's claims based, *inter alia*, upon the applicable statute of limitations and the pendency of *McFadden I*, a prior action addressing many of the same issues raised in this suit.  The moving defendants also seek dismissal as to the defendants who have not yet been served despite the passage of more than 120 days since commencement of the action, as well as a protective order staying discovery during the pendency of the motion.

I.     BACKGROUND[2]

The claims set forth in plaintiff's amended complaint, which is not a model of clarity, appear principally to address medical treatment received by him while in the custody of the DOCS, and in particular the failure of prison medical personnel to adequately diagnose and treat his HCV and complications arising out of that condition.[3]  Plaintiff, who according to defendants has been an inmate at the Clinton Correctional Facility

---

[2]     In light of the procedural posture of the case, the following recitation is derived primarily from plaintiff's complaint, with all inferences drawn and ambiguities resolved in his favor.  *Donhauser v. Goord*, 314 F.Supp.2d 119, 121 (N.D.N.Y. 2004).

[3]     While plaintiff's amended complaint in this action asserts a broad range of conduct on the part of the defendants, it appears from his submissions in connection with both this motion and his application for a preliminary injunction that his principal focus is upon the refusal of prison medical officials to treat his condition through a course of action consisting of pegylated interferon and ribavrin without his first consenting to a medical hold, which essentially would preclude or limit his eligibility for transfer to other prison facilities.  *See generally* Dkt. Nos. 5, 52.

("Clinton") since August of 2000, alleges that he was tested for HCV on September 8, 1995, and again on December 8, 1995, with positive results registered on both occasions.  Amended Complaint (Dkt. No. 7) ¶ 5. Plaintiff's complaint intimates that a third clinical test result from August 18, 2000 revealed the existence of a high liver dysfunction, a condition also suggestive of the presence of HCV.  *Id.* ¶ 6.  Plaintiff maintains that despite those test results, it was not until March of 2002 that he was formally diagnosed as suffering from HCV.  *Id.* ¶¶ 7-8.

As a result of the HCV diagnosis, and following initial screening and satisfaction of various preconditions for treatment, plaintiff was referred in March of 2004 for HCV treatment.  Amended Complaint (Dkt. No. 7) ¶ 9. That treatment was soon interrupted, however, apparently as a result of the issuance of a misbehavior report accusing McFadden of making threats and participating in a riot.  *Id.* ¶ 10.  Though plaintiff's complaint is somewhat imprecise on this score, it appears that that accusation, in combination with the issuance of two additional misbehavior reports, led to a disciplinary hearing, and a sentence of sixteen months of disciplinary confinement in the facility's special housing unit ("SHU"), with a

4

corresponding loss of privileges.[4]  Amended Complaint (Dkt. No. 7) ¶ 11.

Plaintiff alleges that while in disciplinary SHU confinement he was

subjected to conditions more severe than those normally experienced by

inmates in the general prison population, including the denial of heat, being

"forced to endure the banging, kicking, yelling of mentally disturbed

inmates, who were abused by officers", and the presence of urine and

fecal matter.  *Id.* ¶ 12.

On March 19, 2004 plaintiff was taken to the Adirondack Medical

Center for treatment by defendant Irwin Lieb, M.D.  Amended Complaint

(Dkt. No. 7) ¶ 15.  Plaintiff's complaint is equivocal as to what, if any,

action Dr. Lieb took on that occasion.  At one point in his complaint plaintiff

alleges that his refusal to meet with Dr. Lieb while a corrections officer was

present in the same room resulted in the physician's refusal to administer

the contemplated treatment.  *Id.*  Plaintiff's complaint later reflects,

however, that he was in fact treated on that date by Dr. Lieb, who removed

a blockage and prescribed a twice-daily dosage of Flomax to address his

condition.  *Id.* ¶¶ 15-16.

---

[4]        Plaintiff characterizes the issuance of those disciplinary actions as
retaliatory, alleging that they were motivated based upon his filing of *McFadden I* on
July 24, 2003.

The failure of prison medical workers during March and April of 2004, and extending into June of that year, to provide the plaintiff with timely refills of the prescribed medication led to the filing by him a grievance, challenging the discontinuance of the prescription.  Amended Complaint (Dkt. No. 7) ¶¶ 17-18.  Plaintiff asserts that as a result of that grievance, Dr. Lieb declined to treat him and filed a form falsely accusing McFadden of refusing medical treatment.  *Id.* ¶ 18.  According to the plaintiff, the filing of that form led to the issuance on June 17, 2004 of a false misbehavior report charging McFadden with misconduct of an unspecified nature.  *Id.*

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on July 9, 2004, Dkt. No. 1, and later filed an amended complaint, as a matter of right, on October 4, 2004.  Dkt. No. 7.  Named as defendants in plaintiff's amended complaint are DOCS Commissioner Glenn S. Goord; Anthony Annucci, Deputy Commissioner and General Counsel of the DOCS; Donald Selsky, the DOCS Director of Special Housing and Inmate Discipline Programs; Dr. Lester Wright, the DOCS Deputy Director of Medical Services; and nineteen other DOCS employees or affiliates.  Though difficult to discern, it appears that plaintiff's amended complaint asserts claims of medical indifference,

retaliation, deprivation of procedural due process, and cruel and unusual

punishment, and seeks both injunctive and monetary relief.

The commencement of this action was accompanied by a request by

the plaintiff for the issuance of a mandatory preliminary injunction directing

the defendants to provide him with a course of medically prescribed

treatment for his HCV condition.  Dkt. No. 5.  Since that time, by motion

filed on November 22, 2004, plaintiff has additionally sought consolidation

of this action with *McFadden I*, another case previously commenced by

him in this court, Dkt. No. 38, and further has sought, by motion filed on

January 2, 2005, permission to supplement his amended complaint, Dkt.

No. 46.  By order issued on July 19, 2005 District Judge David N. Hurd

denied those motions, although plaintiff was afforded leave to renew his

motion fo consolidation following determination of the pending dismissal

motion.  Dkt. No. 72.

On January 18, 2005 the various defendants who thus far have been

served in the action moved seeking dismissal of plaintiff's complaint

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[5]  Dkt.

---

[5]    At the time that motion was filed, defendants Kang Lee, Donald Selsky, William Brown, Linda Knopu, Sergeant Bernard, David O'Connell, M.D., Lois Crotty, David Armitage and Lester Wright had neither been served nor appeared in the action. Since then, summonses have been reissued, and defendants David Armitage,

No. 50.  In their motion defendants raise several arguments alleging, *inter alia*, that 1) plaintiff's claims are untimely; 2) plaintiff's claims are duplicative of those asserted in another, previously commenced action pending in this court; 3) plaintiff's false misbehavior report and conclusory allegations fail to state a cause of action upon which relief may be granted; 4) plaintiff has failed to allege the requisite degree of personal involvement on the part of various of the defendants in the constitutional violations alleged; and 5) plaintiff's retaliation claims are deficient as a matter of law.[6,7]  Defendants' motion also seeks dismissal of plaintiff's against the unserved defendants, as well as a protective order staying discovery pending resolution of their dismissal motion.  Plaintiff has since responded

---

Sergeant Bernard, and David O'Connell have now been served.

[6]      In his opposition papers, plaintiff objects to the filing on January 18, 2005 of defendants' dismissal motion in light of the fact that the time for the various defendants served prior to that time to answer or otherwise respond to plaintiff's complaint expired on January 15, 2005.  *See* McFadden Aff. (Dkt. No. 52) ¶ 2.  Since January 15, 2005 fell on a Saturday, and Monday, July 17, 2005 was Martin Luther King, Jr. Day, defendants' answer or motion was not due until the next business day, or January 18, 2005.  *See* Fed. R. Civ. P. 6(a).  Plaintiff's timeliness objection is therefore not well taken.

[7]      A portion of defendants' memorandum focuses on the sufficiency of plaintiff's allegations against the backdrop of cases suggesting that conclusory allegations which set forth "a litany of general conclusions that shock but have no meaning" do not state a cause of action under 42 U.S.C. § 1983.  *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).  I have not addressed that portion of the memorandum since it appears to interpret, in my view inappropriately so, each separate paragraph of plaintiff's complaint as alleging a separate, discrete cause of action.

on February 2, 2005 in opposition to the motion by filing assorted papers

which appear to include affidavits, a memorandum, and various other

materials.[8]

Defendants' motion, which is now ripe for determination, has been

referred to me for the issuance of a report and recommendation, pursuant

to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Dismissal As To Defendants Who Have Not Yet Been Served

This action dates back to July 9, 2004.  Dkt. No. 1.  Following

commencement of the action summonses were issued to the plaintiff on

September 27, 2004.[9]  Despite the passage of more than one year since

commencement of the action, however, certain of the defendants,

including Donald Selsky, William Brown, Linda Knopu, Lois Crotty, and

Deputy DOCS Commissioner Dr. Lester Wright, have not been served or

---

[8]   Because the matter is currently before the court on motion to dismiss for failure to state a cause of action, and that motion has not been converted to one for summary judgment, those affidavits and exhibits will be considered by the court only to the extent that they are consistent with plaintiff's amended complaint.  *Negron v. Macomber*, No. 95 Civ. 4151, 1999 WL 608777, at *5 (S.D.N.Y. Aug. 11, 1999).

[9]   According to the court's records, amended summonses were issued by the clerk in connection with this action on November 29, 2004, and again on May 5, 2005.

otherwise appeared in the action.  Defendants suggest that plaintiff's complaint should be dismissed as to those defendants.

Rule 4(m) of the Federal Rules of Civil Procedure requires that service be effected upon a defendant within one hundred twenty days after filing.  Fed. R. Civ. P. 4(m).[10]  This period, however, may be extended by the court upon a finding of good cause.  Fed. R. Civ. P. 4(m); *Shuster v. Nassau Cty.*, No. 96 Civ. 3635, 1999 WL 9847, at *1 (S.D.N.Y. Jan. 11, 1999); *Romand v. Zimmerman*, 881 F. Supp. 806, 809 (N.D.N.Y. 1995) (McAvoy, C.J.).  In this instance, in his order dated July 29, 2005 District Judge David N. Hurd has in fact extended the deadline for service of process in this case until September 30, 2005.  *See* Dkt. No. 72. Accordingly, I recommend that the portion of defendants' motion seeking dismissal as against those defendants who remain unserved be denied, without prejudice to defendants' right to renew in the event of a failure of service within the currently extant time frame.

B.   Dismissal Motion Standard

When confronted with a motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court

---

[10]   That period is further constricted to sixty (60) days under the terms of Northern District of New York Local Rule 4.1(b).

is tasked with gauging the facial sufficiency of that pleading, applying a

standard which is neither controversial nor rigorous in its requirements.

Under that provision, a court may not dismiss a complaint unless "it

appears beyond doubt that the plaintiff can prove no set of facts in support

of his claim which would entitle him [or her] to relief." *Davis v. Goord*, 320

F.3d 346, 350 (2d Cir. 2003) (citing, *inter alia*, *Conley v. Gibson*, 355 U.S.

41, 45-46, 78 S. Ct. 99, 102 (1957)).  In deciding a Rule 12(b)(6) dismissal

motion, the court must accept the material facts alleged in the complaint as

true, and draw all inferences in favor of the non-moving party.  *Cooper v.*

*Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964); *Miller v. Wolpoff &*

*Abramson, LLP,* 321 F.3d 292, 300 (2d Cir.), *cert. denied*, 540 U.S. 823,

124 S. Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp.2d 179, 182

(N.D.N.Y. 2005) (Kahn, J.).  The court's determination as to the sufficiency

of a complaint must take into consideration the fact that the governing

rules require only that the defendant be afforded "fair notice of what the

plaintiff's claim is and the grounds upon which it rests."  *Conley*, 355 U.S.

at 47, 78 S. Ct. at 103; *see Phillips v. Girdich*, 408 F.3d 124, 127-29 (2d

Cir. 2005).

　　　　When assessing the sufficiency of a complaint against this backdrop,

a court must afford particular deference to a *pro se* litigant; a court must generously construe a *pro se* plaintiff's complaint when determining whether it states a cognizable cause of action. *Davis*, 320 F.3d at 350 (citation omitted); *Donhauser*, 314 F. Supp.2d at 121. A complaint drafted by an uncounselled plaintiff should not be dismissed unless "it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations." *Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir. 1997) (citation omitted). In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

    C.   <u>Statute of Limitations</u>

    Plaintiff's claims, though far from clearly articulated, could be construed as encompassing acts or omissions dating back as far as 1995, including defendants' alleged failure to properly diagnose and treat his HCV condition despite evidence of symptomology suggestive of such a medical condition. In their motion, defendants argue that many of plaintiff's

claims are barred by the applicable statute of limitations.

Consistent with the Supreme Court's pronouncement that in actions brought under 42 U.S.C. § 1983 the applicable limitation period is derived from the "general or residual [state] statute [of limitations] for personal injury actions" of the forum state, *see Owens v. Okure*, 488 U.S. 235, 249-50, 109 S. Ct. 573, 582 (1989), plaintiff's claims in this action are governed by the statute of limitations which applies in New York to personal injury claims of an otherwise unspecified nature.  N.Y. Civil Practice Law and Rules § 214(5); *see Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) (citing *Owens*); *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995); *Lugo v. Senkowski*, 114 F. Supp.2d 111, 113 (N.D.N.Y. 2000) (citing *Pinaud* and *Owens*).  Despite the fact that state statutes of limitation, which often vary in length from jurisdiction to jurisdiction, apply to such federal claims, determination of the proper accrual date to affix in connection with a section 1983 claim is controlled by federal law. *Ormiston*, 117 F. 3d at 71.  Such a claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of his [or her] action.*"* *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (citations omitted), *cert. denied*, 450 U.S. 920, 101 S. Ct. 1368 (1981).

Plaintiff's complaint in this action was formally filed with the court on July 9, 2004.  The affidavit of service attached to that complaint, however, was notarized on June 29, 2004.  Affording the plaintiff the benefit of inferences to be drawn from this sequence, and applying the prison mailbox rule recognized in this circuit as controlling for purposes of measurement of the statute of limitations in an action brought by a prison inmate, *Houston v. Lack*, 487 U.S. 266, 270-76, 108 S. Ct. 2379, 2382-85 (1988); *Jones v. Waterbury Police Dep't*, No.3:04CV2137, 2005 WL 1185723, at *2 (D. Conn. May 12, 2005), I find that defendants' motion should be granted only to the extent of dismissing any claims which accrued prior to June 29, 2001.

D.    <u>False Misbehavior Reports</u>

Focusing on allegations set forth in two particular paragraphs of plaintiff's amended complaint, alleging the issuance of false misbehavior reports, *see* Amended Complaint (Dkt. No. 7) ¶¶ 10, 18, defendants assert that those claims are legally deficient since, as a matter of law, the Constitution ordinarily does not protect an inmate against the issuance of such false misbehavior reports.

It is well-established that "a prison inmate has no general

14

constitutional right to be free from being falsely accused in a misbehavior report." *Boddie*, 105 F.3d at 862(citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982, 108 S. Ct. 1273 (1988)). Only when the issuance of a false misbehavior report is accompanied by a due process deprivation is a cognizable constitutional cause of action stated. *Franco v. Kelly*, 854 F.2d 584, 587-89 (2d Cir. 1988).

The gist of plaintiff's claim regarding the June 17, 2004 misbehavior report is that it was issued as a pretext for defendants' refusal to provide him with appropriate medical treatment. While such an allegation may indeed be germane to plaintiff's deliberate indifference claim, it does not provide a basis for a separate cause of action growing out of the issuance of that false misbehavior report alone. Plaintiff's allegations regarding the issuance of a misbehavior report on June 17, 2004, to the extent they can be interpreted as alleging a constitutional violation based solely upon the falsity of its contents, are therefore legally deficient, and that claim should be dismissed, though with leave to replead.

Plaintiff's allegations surrounding the issuance of the March 10, 2004 misbehavior report go beyond simply asserting its falsity. In his complaint, plaintiff alleges that the false misbehavior report was issued in retaliation

for having named certain corrections officers as defendants in *McFadden I*. Such an allegation plainly removes it from the realm of the ordinary false misbehavior report claim, and is sufficient to state a cause of action for unlawful retaliation. *Franco*, 854 F.2d at 587-89. It does not, however, give rise to a separate, independent constitutional violation based solely upon its alleged falsity.

### E.   Personal Involvement

Plaintiff's amended complaint identifies twenty-two individuals as defendants. From the text of that amended complaint, however, the degree of involvement of many of those named defendants is not readily apparent. On this basis defendants seek dismissal of plaintiff's claims against certain of the named individuals, including various DOCS supervisory officials such as Commissioner Goord, General Counsel Annucci, and defendants Tedford, Artus, Roy, Gordon and Novello.[11]

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,*

---

[11]   In their memorandum defendants advise that defendant Novello is not employed by the DOCS. *See* Defendants' Memorandum (Dkt. No. 50) at 10.

16

568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor – there is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

17

### 1.   Defendant Goord

Plaintiff's complaint alleges that his complaints regarding the various experiences recounted in his complaint were "acknowledged by defendant (3) Glenn S. Goord", implying that as a result of those complaints to Commissioner Goord the DOCS General Counsel, Anthony Annucci, visited the Clinton SHU in April of 2004.  Amended Complaint (Dkt. No. 7) ¶ 19.  Without more, this allegation is insufficient to implicate Commissioner Goord in the constitutional violations alleged in plaintiff's complaint.  *See Reid v. Artus*, 984 F.Supp. 191, 195 (S.D.N.Y. 1997) (no basis for supervisory liability when defendant assigned an officer to investigate complaint and informed plaintiff that investigation had been commenced); *Gonzalez v. Coughlin*, No. 92 CIV. 1263,1996 WL 496994, at *3 (S.D.N.Y. Sept. 3, 1996) (no personal involvement when defendant delegated investigation, received follow-up report, and closed the investigation).   Accordingly, I recommend dismissal of plaintiff's claims as against defendant Goord, with leave to replead.

### 2.   Defendant Annucci

Plaintiff's claims against defendant Annucci stand on slightly different footing.  As was indicated above, plaintiff asserts that in response to his

complaints regarding conditions at the Clinton SHU, defendant Annucci visited the facility in April of 2004.  This allegation, liberally construed, sufficiently suggests defendant Annucci's personal awareness of at least some of the matters set forth in plaintiff's complaint related to the confinement conditions which he experienced at SHU, and therefore suffices to allege a constitutional violation against that defendant. Accordingly, I recommend against dismissal of plaintiff's claims with regard to this defendant based upon lack of personal involvement.

        3.    <u>Defendants Artus and Tedford</u>

     Defendant Dale Artus, who is identified as the Superintendent of the Clinton Correctional Facility, and T. Tedford, Deputy Superintendent for Security Services, also claim lack of personal involvement in the constitutional violations alleged.  In the sole allegation directly naming those two defendants, plaintiff's complaint alleges that he was issued a misbehavior report on March 18, 2004, "by influence of Defendants T. Tedford . . . [and] Dale Artus," resulting in sixteen months of disciplinary SHU confinement and a corresponding loss of privileges.  Amended Complaint (Dkt. No. 7) ¶ 11.  As I have already found, plaintiff's allegations surrounding the March 18, 2004 misbehavior report are sufficient to make

a *prima facie* showing of a claim of retaliation.  Accordingly, interpreting his complaint in a light most favorable to him, I find that plaintiff's allegations against defendants T. Tedford and Dale Artus are sufficient to implicate their involvement in the unlawful retaliation claim surrounding that misbehavior report.  *Rivera v. Pataki*, No. 04 Civ. 1286, 2005 WL 407710, at *25 (S.D.N.Y. Feb. 7, 2005).  I therefore recommend a finding that plaintiff has alleged the requisite degree of personal involvement with regard to defendants Tedford and Artus.

### 4.   Defendants Roy, Gordon and Novello

While the precise nature of his allegations against defendant Gordon is unclear, it appears that McFadden alleges both Gordon's awareness of his medical condition and his participation in the defendants' refusal to provide him with the required medical treatment to address it.  *See*, *e.g.*, Amended Complaint (Dkt. No. 7) ¶¶ 5, 6.  Liberally construed, and resolving all ambiguities in plaintiff's favor, these allegations are sufficient to establish defendant Gordon's personal involvement in the violations alleged.

By contrast, plaintiff's allegations against defendant Roy are deficient.  In his complaint, plaintiff asserts only that defendant Roy's

20

"policies are allowing these violations to occurred [sic] and threatening [sic] plaintiff's life[.]"  Amended Complaint (Dkt. No. 7) ¶ 19.  This allegation, standing alone, is insufficient to establish defendant Roy's personal involvement in the violations alleged.[12]  *See, e.g.*, *Garvin v. Goord*, 212 F.Supp.2d 123, 127 (W.D.N.Y. 2002).

Upon a close reading of plaintiff's complaint it does not appear that defendant Novello is mentioned anywhere within its body.  The failure of plaintiff to allege conduct on defendant Novello's part which would implicate him in the constitutional violations alleged provides a basis for dismissal of plaintiff's claims against him, though again, with leave to replead.  *E.g.*, *Hucks v. Artuz*, No. 99 Civ. 10420, 2001 WL 210238, at *5 (S.D.N.Y. Feb. 27, 2001) (no personal involvement when defendant named in caption but not described in body of complaint); *Dove v. Fordham Univ.*, 56 F. Supp.2d 330, 335 (S.D.N.Y. 1999) (same); *Brown v. Costello*, 905 F. Supp. 65, 77 (N.D.N.Y. 1995) (same).

F.    Retaliation

In their motion, defendants also attack the sufficiency of plaintiff's retaliation claims.  Noting the ease with which such claims can be

---

[12]    From plaintiff's complaint, it appears that defendant Roy is employed with the DOCS Inspector General.  *See* Amended Complaint (Dkt. No. 7) caption.

contrived, defendants urge the court to more carefully scrutinize plaintiff's retaliation cause of action for legal sufficiency.

In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977); *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001). If the plaintiff carries this burden, the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct." *Mount Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. If taken for both proper and improper reasons, then, state action may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted). This three-pronged test suggests that evaluation of retaliation claims is a particularly fact-laden exercise.

22

Defendants' motion to dismiss plaintiff's retaliation claims attacks the sufficiency of plaintiff's allegations of a causal connection between his complaints, which they do not dispute represented protected activity, and the adverse action alleged.  In making this argument defendants note that based upon the sheer number of defendants sued by McFadden in his many civil rights actions, a claim of retaliation could be made virtually at any time adverse action is taken against him by one of those defendants.

Recognizing the relatively modest hurdle which plaintiff must now surpass, I find that plaintiff's allegations of retaliation, though skeletal, are sufficient to pass muster at this early stage of the proceedings.  Plaintiff has alleged that adverse action was taken against him, in retaliation for his protected activity.  However skeptical the defendants may be as to plaintiff's ability to establish the requisite causal connection between his complaints and that adverse action, when liberally construed his complaint adequately pleads a retaliation claim.  I therefore recommend that this portion of defendants' motion be denied.

G.   Prior Action Pending

At the heart of defendants' dismissal motion is the contention that because of the pendency of *McFadden I*, an action previously filed in this

court asserting claims which, at a minimum, overlap those implicated in this case, the second duplicative suit is subject to dismissal.

As a matter of judicial discretion, a court may dismiss an action which is duplicative of another, previously filed suit. *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000).  The basis for taking such a measure stems from the desire to avoid duplicative litigation, and therefore to promote judicial economy and protect parties from "'the vexation of concurrent litigation over the same subject matter[.]'" *Curtis*, 226 F.3d at 138 (quoting *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1999)).  Simply stated, a plaintiff has "no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Id.* at 139.  Because of the difficulties involved in anticipating the preclusive effects of a case that is still pending, courts faced with a duplicative commonly stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions. *Id.* at 138 (collecting cases).  The action to be taken when such circumstances are presented, if any, "is one of the district court's discretion in the comprehensive management of litigation in its court." *Id.* at 139.

In *McFadden I*, which is urged as a basis for dismissal of plaintiff's

24

claims in this action, McFadden has named fifty defendants, twelve who are also defendants in this action.  Plaintiff's complaint in that suit alleges that while he was incarcerated at Clinton, defendants were deliberately indifferent to his medical needs, including by failing to treat his ear and HCV conditions.  *See McFadden I*, Amended Complaint (Dkt. No. 8).

Unquestionably, there is considerable overlap in the issues raised in *McFadden I* and *McFadden II*, although *McFadden II* also asserts claims, including retaliation and conditions of confinement, that are not found in *McFadden I.*  Seemingly acknowledging the commonality of underlying facts, defendants and issues into two cases, plaintiff has indeed moved in both actions seeking consolidation of the two.

Because the identity of defendants, issues and claims implicated in the two cases are not entirely co-extensive, I recommend against dismissal of this action based upon the prior pendency of *McFadden I.*  Instead, I recommend that the court *sua sponte* consolidate the two actions, as has previously been requested.  In this way, all of the surviving claims of the plaintiff against the various defendants can be fully aired in a manner which both promotes judicial economy and protects against vexatious litigation.

25

### H.   Protective Order

In their motion defendants seek a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure staying discovery pending disposition of this motion.  That rule authorizes the court, in its discretion, to issue a protective order granting various forms of relief including, *inter alia*, to stay discovery during the pendency of a dismissal motion.  Fed. R. Civ. P. 26(c); *see Hachette Distrib., Inc. v. Hudson County News Co., Inc.*, 136 F.R.D. 356, 357-58 (E.D.N.Y. 1991).  Because I find that the most effective way of insuring that discovery in this matter proceeds in an orderly and efficient fashion is to await final disposition of the pending dismissal motion so that the issues in this case may properly be framed, and the corresponding scope of permissible discovery under Rule 26(b) established, I will grant defendants' request for a stay of discovery pending final determination with respect to the pending motion.

### IV.   SUMMARY AND RECOMMENDATION

The pending motion by the defendants seeking dismissal of plaintiff's claims raises a variety of issues, some of which are no longer relevant. Considering defendants' motion in light of the deferential standard which applies, and affording the plaintiff the benefit of all doubt and drawing all

inferences in his favor, with the exception of claims which accrued prior to June 29, 2001, and with regard to the allegations surrounding the allegedly false misbehavior report issued on June 17, 2004, I find that plaintiff's amended complaint is legally adequate in setting forth alleged constitutional violations, including with regard to his claims of retaliation.

I further find that plaintiff's claims are subject to dismissal, with leave to replead, as against defendant Goord, Roy and Novello, based upon the lack of any showing of their personal involvement in the constitutional violations alleged.  With respect to the portion of defendants' motion which is based upon the alleged untimeliness of service, that motion is denied, without prejudice, in view of the court's extension of the deadline for completion of service until September 30, 2005.

Addressing defendants' application for dismissal of this action based upon the pendency of *McFadden I*, I recommend that it be denied, but that the two actions be consolidated by the court, *sua sponte*, and, consistent with this court's policies and practices, that the matter be reassigned to District Judge Lawrence E. Kahn and Magistrate Judge David R. Homer, the two assigned judges in the earlier filed case, and that *McFadden I* be designated as the lead case, with this case as the member.  Finally, in light

of the fact that the issues in this action have not yet been fully framed due to the pendency of the instant motion, I will grant defendants' request for a limited stay of discovery pending final disposition of the motion.

Based upon the foregoing, it is hereby

RECOMMENDED, that defendants' motion for dismissal of plaintiff's complaint (Dkt. No. 50) be GRANTED, to the extent of dismissing plaintiff's claims which accrued prior to June 29, 2001, and those related to the issuance of the misbehavior report on June 17, 2004, and additionally with respect to all claims against defendants Goord, Roy and Novello, with leave to replead, but that the motion otherwise be DENIED; and it is further hereby

RECOMMENDED, that this action be consolidated with Civil Action No. 9:03-CV-00931 (LEK/DRH), which would then be designated as the lead case, with this action becoming the member case; and it is further

ORDERED, that all discovery in this action is stayed pending final disposition with regard to defendants' motion to dismiss (Dkt. No. 50), pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections

28

shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS

REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette,*

984 F.2d 85 (2d Cir. 1993).

      It is further ORDERED that the Clerk of the Court serve a copy of this

report and recommendation upon the parties by regular mail.

Dated:     August 31, 2005
             Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\ISSUES\civil rights\collateral estoppel\prior action pending\mcfadden.wpd

29